UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRENDA ANN MILTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-3732** |
| **JO ANNE B. BARNART,** **COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | **SECTION: "J" (4)** |

## REPORT AND RECOMMENDATION

### I.   Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 United States Code § 405(g).  The Commissioner denied Brenda Ann Milton's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, Title 42 United States Code § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations

### II.   Factual and Procedural Summary

The claimant, Brenda Ann Milton, is a fifty-one-year-old female with a high school diploma and one year of college.  (Tr.66).  She alleges that she has been disabled since August 2003 due to medical conditions caused by bites from brown spiders, namely; constant unremitting pain, Post

Traumatic Stress Disorder ("PTSD"), depression, neuragalia, insomnia and anxiety.  (Pl.'s Mem. at 2, 3).  She also contends that she suffers from sinusitis, cortical cataracts, and hypertension.  (Tr. 20, 26).

On April 2, 2004, Milton protectively filed an application for DIB and SSI.  ( Tr.48-52, 60, 192-199).  On August 18, 2004, her initial request for benefits was denied.  (Tr. 31-32).  Milton requested a review by the administrative law judge and a hearing was set for April 21, 2005.  (Tr.39).   The matter was assigned to Administrative Law  Judge Gary L. Vanderhoof.

After conducting the hearing, the ALJ  found that Milton  met the non-disability requirements for a period of disability and insurance benefits.  (Tr. 26).  He further found that Milton's neuralgia, sinusitis, cortical cataracts and hypertension were severe within the meaning of the regulations.  *Id.*  He also found that Milton's PTSD and anxiety attacks were not medically determinable conditions.  *Id.*  He also considered her complaints of pain and found that they were not credible as they were not corroborated by the medical evidence and were otherwise moderate and not severe.  (Tr. 27).  He further found that her depression and moderate obesity were not severe.  (Tr. 26).  The ALJ concluded that Milton's conditions neither singly nor in combination, met or equaled the criteria for any impairment set forth in 20 C.F.R. Pt. 404 Subpt. P. ( Tr. 26-27).

The ALJ also found that Milton was closely approaching advanced age, that she could perform a full range of exertional work activities, sit six hours out of an eight hour day and stand and/or walk each for at least six hours out of an eight hour day.  (Tr. 27).  He further found that she could not drive or perform work requiring climbing of ladders, ropes or scaffolds or working at unprotected heights.  *Id.*  He finally found that she could not perform work requiring precise balancing but could perform work of moderate stress.  *Id.*

He concluded that she could not work in her past relevant work area as an expediter, general laborer and laboratory technician from which she gained transferable skills to lighter work activity. *Id.* He also concluded that there were significant numbers of jobs in the national and or statewide economies that she could perform. *Id.*

Thereafter, Milton sought review of the ALJ's decision with the Appeals Council. (Tr. 11-12). On July 29, 2005, the request was denied. (Tr. 6-9). Milton then filed this request for review on August 11, 2005. (Rec. Doc. No. 1).

### III.  Issues

A.  Whether the ALJ's decision that Milton had the residual functional capacity to perform a full range of exertional work activities is based upon substantial evidence.

B.  Whether the new evidence submitted by the plaintiff warrants a remand.

### IV.  Standard of Review

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *See id.* If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "It is more than a mere scintilla and less than a preponderance." *Id.* It must do more than create a suspicion of the existence of the fact to be established, and no "substantial evidence" will be found only when there is a

"conspicuous absence of credible choices" or "no contrary medical evidence."  *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted  . . . for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A).  Section 423(d)(3) of the Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.  The rules governing the steps of this evaluation process are:  (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.  *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  The burden of proof is on the claimant for the first four steps, but shifts to the Secretary at step five.  *See Anderson v. Sullivan*,

887 F.2d 630, 632-33 (5th Cir. 1989).

## V. Analysis

### A. Decision and whether its supported by the record

Milton contends that, contrary to the ALJ's opinion, she suffers with neuralgia (shingles) caused by brown spider bites, depression, hypertension and constant pain. She contends that her treating physician diagnosed her with PTSD and depression. She complained about not having enough money to buy her medication or to continue seeing a doctor. She therefore contends that the ALJ's decision should be reversed.

The Commissioner contends that the ALJ properly concluded that none of her ailments, either singly or in combination, render her disabled within the meaning of the regulations. It therefore contends that the ALJ's decision should be affirmed.

In assessing the credibility assertions of disabling pain, the ALJ is free to consider the following factors: (1) the onset of pain is related to a precise event;[1] (2) whether there are consistent notes of pain in the medical record, including diagnosis and prescription of pain medications;[2] and (3) there is a consistency with the medical evidence.[3] The ALJ may not ignore the subjective complaints of the claim if supported by medical signs and findings. *Veal v. Bowen,* 833 F.2d 693, 698 (7th Cir. 1987).

Mild or moderate pain does not render a claimant disabled. *See Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir.1987). Subjective evidence need not take precedence over objective

---

[1] Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *See Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). *See Duncan v. Harris*, 518 F. Supp 751, 759 (E.D. Ark. 1980).

[2] *See Carpenter v. Heckler*, 733 F.2d 591, 592-93 (8th Cir. 1984).

[3] *See Holland v. Heckler*, 768 F.2d 277, 281 (8th Cir. 1985).

evidence.  *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988).  Moreover, a fact finder' evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence.  *Id.* at 1384.  In this case, the ALJ properly considered Milton's claims of pain.

The ALJ noted that Milton may suffer from a mild to moderate degree of pain.  (Tr. 22).  He noted that she did not require narcotic pain medications, nor did she make any emergency room presentations for medical intervention.  *Id.*  He further noted that despite her assertions of ongoing pain, she did not require consistent care for her neuralgia.  *Id.*  He also noted that while she might not have been able to afford care, free or at cost medical services were available from the state funded Medical Center of Louisiana.  *Id.*  He noted that after her initial period of treatment for neuralgia ended in January 2004, she resumed treatment in July 2004 and by November 2004 she was being followed by the doctor every three months.  *Id.*

The record shows that Milton received treatment for her neuralgia which caused her to experience pain over her right forehead, face, ear and neck secondary to spider bites.  (Tr. 129-131, Tr. 132).  She was treated by Dr. William Martin who prescribed Neurontin, and by January 19, 2004, some five months after being bitten, the condition had cleared.  *Id.*  Dr. Martin discontinued prescribing Neurotin.  He did find, however, that she suffered with migraine headaches and sinus trouble.  *Id.*

The record further shows that an MRI of the brain and CT of Milton's head were taken to assess her complaints of severe migraines, dizziness, nausea.  (Tr. 117).  The MRI of the brain showed a mild leftward deviating nasal septum and rhinitis with ethmoidal inflammation and a partial empty sella.  The CT of her head showed a slight thickening of the mucoperiosteum of the

frontal sinuses and a slight deviation of the nasal septum. *Id.* It was concluded that she had blockage of a nasal passage.

The ALJ concluded that while Milton would experience sinus condition periodically, her problems would be relieved with decongestants and antibiotic therapy. Milton also acknowledged that she was not having difficulty with her sinuses nor did she complain of constant migraines. Therefore, the ALJ's finding that Milton's migraines, neuraglia, sinusitis, and pain were not disabling conditions is supported by the evidence.

Milton also alleged that she suffered with depression, PTSD and anxiety which were disabling conditions preventing her from being able to work. The Commissioner contends that the ALJ's decision was correct when he found that her depression was moderate and that there was no evidence of PTSD and anxiety as her physician who diagnosed her with these conditions was a neurologist and not a psychologist or psychiatrist and had not treated her long enough to qualify as a treating physician.

The record confirms that the ALJ rejected the diagnosis of PTSD and anxiety attacks by Dr. D'Souza. In so doing, he noted that Dr. D'Souza is a neurologist and not a psychiatrist who is trained in the treatment and diagnosis of mental conditions. (Tr. 24). He further noted that Milton exaggerated her symptoms when she visited Dr. D'Souza, and that only three visits to a doctor is not sufficient to render him a treating physician within the meaning of the regulations. *Id.* He therefore concluded that Dr. D'Souza had not developed a detailed, longitudinal picture of plaintiff's condition to qualify as a treating physician or opine that she was totally and permanently disabled on February 18, 2005.

The record confirms that Milton saw Dr. D'Souza beginning in July 2004. On the initial visit

7

he diagnosed her with right trigeminal neuralgia, a residual effect from spider bites with no other focal neurological deficits. (Tr. 189-190). He made no mention of mental disorders and instructed her to return in one to two months.

He then saw her again on August 12, 2004. (Tr. 187). During this visit he noted that her right trigeminal neuritis had improved and told her continue on her present medications which were Propranolol[4], Amitriptyline[5], Tylenol 3, Nexium[6], vitamins, and Zonegran[7]. He advised her to return in three months. *Id.*

The final visit, according to the record, occurred on November 4, 2004. (Tr. 185). It was on this visit that Milton reported to Dr. D'Souza that she was having anxiety episodes when she is in a closed space or crowds and that this condition existed only since the spider bite. (Tr. 185). Therefore, based upon her complaints, Dr. D'Souza concluded that in addition to her improved right trigeminal neuritis, she also suffered with PTSD with anxiety attacks. (Tr. 185). He prescribed Lepraxo[8] and told her to follow up in three months.

However, there is no record that she sought additional treatment from him. There is also no evidence in the record indicating that Dr. D'Souza conducted any mental evaluations that would support his diagnosis of PTSD or anxiety. In fact the ALJ properly noted that the record was devoid of any evidence suggesting that Milton required physician intervention for anxiety attacks.

---

[4]Propranol is used to treat hypertension. PHYSICIAN'S DESK REFERENCE,3336, 59th ed.(2005) (hereinafter "PDR").

[5]Amitriptyline is used in the treatment of depression. Drugs.com, *Amitriptyline*, http://www.drugs.com/amitriptyline.html (last visited November 28, 2006).

[6] Nexium is used in the treatment of erosive esophagitis. PDR at 623.

[7]Zonegran is used in the treatment of partial seizures in adults with epilepsy. *Id.* at 1201.

[8]Lexapro is used in the treatment of depression. *Id.* at 1282.

The ALJ further looked at the factors that are required for a proper diagnosis of a feeling of being in imminent danger, impending doom, an urge to escape, losing control or a myocardial infraction or CVA and noted that these were absent from the record. The Court finds that the ALJ's decision to reject Dr. D'Souza's diagnosis of PTSD and anxiety is based upon the record.

In addition to her diagnosis of anxiety and PTSD, Milton contends that she suffers from major depression which inhibits her ability to work. The Commissioner contends that the ALJ properly concluded that her depression was moderate and not severe.

In concluding that Milton's depression was not severe, the ALJ noted that her condition was allegedly manifested by crying spells, but that she was not homicidal, suicidal, psychotic or paranoid. (Tr. 20). He found that her depression was the result of transient psycho social stressors of unemployment and her battle for Worker's Compensation benefits. *Id.* He determined that her depression had only a slight impact on her social and occupational functioning. He further noted that she had not sought medical treatment for her condition through her state funded mental health centers which would have been free or at cost. He noted that she was prescribed medications for depression in connection with her neuralgia only. *Id.*

According to the record, Dr. Martin prescribed Amitriptyline 25 mg for sleep and depression and asked her to return in about three weeks to evaluate the effectiveness of the prescription treatment. (Tr. 133). On January 19, 2004, he increased her prescription for Amitriptyline to 30 mg and suggested that she continue to see her primary care physician for her sinus problem. (Tr. 131-131).

She returned to Dr. Waguespack, a general practitioner, for her medical treatment and there is no record of him prescribing her medication to treat depression and she treated with him through

9

March 29, 2004. (Tr. 140-145). However, Dr. D'Souza prescribed a reduced prescription of 25 mg of Amitriptyline on July 27, 2004. (Tr. 188).

The next record of some form of treatment for depression occurred on February 18, 2005 by Dr. D'Souza. According to the record, he prescribed Lexapro for her edginess, sadness and anger. (Tr. 100). Milton testified that her depression was somewhat controlled although she did not feel she could work. (Tr. 220). She acknowledged during the hearing that she had not seen any other doctor for medical treatment. (Tr. 220). The record therefore supports the ALJ's decision that Milton's depression was non-severe. Further, the record confirms that the ALJ properly considered Milton's medical treatment and the examinations by her physicians were properly weighed such that the ALJ's determination that she had the residual functional capacity to work was based upon substantial evidence.

### B.   The New Evidence

The plaintiff attached a Physician's Statement of Dr. Robert Ellis dated January 18, 2006 to her brief as additional evidence. However, the Commissioner opposed the consideration of new evidence because it was outside of the record. The Commissioner further noted that the Court's review is limited to the administrative record that was before the Commissioner on July 29, 2005.

Title 42 U.S.C. § 405(g) provides that a court may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that the new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. After remand, the party shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon

which the Commissioner's action in modifying or affirming was based.

The decision whether to consider evidence outside the administrative record is within the discretion of the district court. *Hartranft v. Hartford Life and Accident Insurance*, CIV.A. 1870, 2004 WL 2377228 (D. Conn. Sept. 30, 2004)  To justify a remand, the evidence must satisfy three criteria. The evidence must be both new and not merely cumulative of the evidence already in the record.  The evidence must also be material. *See id.* In other words, the evidence must be "relevant, probative, and likely to have changed the outcome of the Secretary's determination." *Id.*   Finally, the claimant must show good cause for failing to incorporate the evidence into the administrative record.

The additional medical information submitted by Milton for consideration consists of the "Attending Physician's Statement" by Dr. Robert Ellis who diagnosed her with PTSD with Psychotic Symptoms and Depression caused by spider bites with severe physical and psychological symptoms.  (Pl. Mem. Ex. A).  The document notes that her visit was a follow up to a November 17, 2005 visit.

The Court notes that the information is somewhat cumulative as it shows that she was diagnosed with PTSD as a result of spider bites.  The added information indicates that she had psychotic features associated with her PTSD.  There is no indication of the manner in which the doctor  concluded that she has PTSD with psychotic features.  No treatment records are provided by Milton such that no good cause was shown for the submission of the records attached to Milton's brief.  Therefore, the request to consider additional evidence should be denied.

**VI.**     **Recommendation**

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying

Brenda Ann Milton's application for Disability Insurance Benefits and Supplemental Security Income Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___30th___ day of November 2006

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**